# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY R. JOHNSON, SR., : | |
|     Plaintiff : | |
| : | No. 1:11-cv-00776 |
| v. : | |
| : | (Chief Judge Kane) |
| HERSHEY CREAMERY COMPANY, : | |
|     Defendant : | |

## MEMORANDUM

Defendant Hershey Creamery Company moves the Court for summary judgment on all counts of Plaintiff Anthony R. Johnson's complaint. (Doc. No. 21.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendant's motion in part, and deny it in part.

## I.     BACKGROUND

The following facts are undisputed, unless noted. On March 31, 2008, Plaintiff Anthony R. Johnson, Sr., a fifty-year old African-American male, began work as a part-time seasonal employee for Hershey Creamery in the cold storage warehouse located at Hershey Creamery's Cameron Street location in Harrisburg. (Doc. No. 22 ¶ 1.) As part of the annual seasonal layoff at the end of the summer, Plaintiff was laid off in September 2008. (Id. ¶ 7.) After the layoff, two Caucasian seasonal employees were subsequently hired for full-time positions in the cold storage warehouse. (Id. ¶ 10; Doc. No. 22-1 at 9.) Plaintiff asked Philip Keeney, the Assistant Vice-President and Plant Manager of Hershey Creamery, why he had not been selected for the available full-time positions. Mr. Keeney informed Plaintiff that seasonal employees were selected for full-time employment based on work ethic, attendance, attitude, and excellent performance. (Doc. No. 22 ¶ 10.) Mr. Keeney further explained that one of the employees

1

selected for the full-time position had worked there for a previous summer and had a commercial driving license. (Id. ¶ 11.) Plaintiff accepted this explanation and concedes that he did not feel Defendant had discriminated against him at that point in time in selecting the two Caucasian employees instead of him for the available full-time positions in 2008. (Id. ¶ 8.)

In January 2009, Plaintiff was rehired by Kenny Kemler, the plant supervisor, as a seasonal employee for the upcoming summer season. (Id. ¶¶ 14-17.) Plaintiff maintains that he was hired earlier than most seasonal employees because of his good work performance during the previous summer. (Doc. No. 29 ¶ 15.) Defendant, meanwhile, maintains that Plaintiff was hired in January 2009, simply because the Creamery needed to hire a few summer seasonal employees prior to the start of the traditional summer season. (Doc. No. 22 ¶ 17.) In March 2009, Mr. Kemler also hired Chad Kemrer, a thirty-year old Caucasian male, for the upcoming summer season. (Id. ¶ 18.) Both Plaintiff and Mr. Kemrer were laid off on July 31, 2009, as part of the annual summer seasonal layoff. (Id. ¶¶ 19-20.) Following the seasonal layoff, a full-time cold storage warehouse employee quit his job. (Id. ¶ 31.) Defendant subsequently selected Mr. Kemrer to fill the full-time position, who accepted the job on August 31, 2009. (Id. ¶ 46.)

After Plaintiff became aware that Mr. Kemrer had accepted the full-time position, he called Mr. Keeney to ask why he had not been selected for the full-time position. (Doc. No. 22 ¶ 61.) Mr. Keeney informed him that "the guys in the department wanted Chad there." (Id.) On September 15, 2009, Plaintiff filed an administrative complaint against Hershey Creamery alleging that he was discriminated against on the basis of his race and his age when he was not selected for the full-time position filled by Mr. Kemrer. (Id. ¶ 64.) In January 2010, Plaintiff called Mr. Kemler to inquire whether he would be hired as a summer seasonal employee for the

2010 summer season. (Id. ¶ 65.) Mr. Kemler informed Plaintiff that he would likely not be hired because Plaintiff had filed an administrative complaint against Defendant. (Id. ¶ 67.) In March 2010, Plaintiff filed his second administrative complaint against Defendant, alleging Defendant had unlawfully retaliated against him for filing his first administrative complaint by failing to offer him a summer seasonal position for the 2010 summer season. (Id. ¶ 68.) Shortly after Plaintiff filed his second administrative complaint, Defendant offered him a summer seasonal position for the 2010 summer season. (Id. ¶ 69.) Plaintiff asserts that this offer of summer seasonal work occurred as part of a settlement offer, not as part of Defendant's normal seasonal hiring. (Id. ¶ 69; Doc. No. 29 ¶ 69.) Plaintiff then rejected Defendant's offer of seasonal work because he had secured a full-time work elsewhere. (Doc. No. 22 ¶ 70; Doc. No. 29 ¶ 70.)

On April 21, 2011, Plaintiff filed a lawsuit in this Court, alleging that Defendant had unlawfully discriminated against him on the basis of his age and race by failing to hire him for the full-time position that opened up in the cold-storage warehouse at the end of the 2009 summer season, and that as the result of Plaintiff having filed an administrative complaint against Defendant in September 2009, Defendant retaliated against him by failing to offer him seasonal work in January 2010. (Doc. No. 1.) Defendant filed a motion for summary judgment on all three counts on August 27, 2012. (Doc. No. 21.) Plaintiff filed a brief in opposition with respect to Count I and Count II of his complaint relating to his race discrimination and retaliation claims. (Doc. No. 28.) The motion has been fully briefed and is now ripe for disposition.

## II.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp.. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be

4

more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

When a non-moving party bears the burden of proof on a particular issue at trial, the movant's initial burden may be met by simply "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 322. After the moving party has met its initial burden, the non-moving party must rebut by making a factual showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial. Id. The non-moving party may not defeat summary judgment by the bare assertion that the facts are sufficient to support her claims; instead, the non-moving party must go beyond the pleadings themselves, by affidavits or other evidence, to designate specific facts showing that there is a genuine issue of material fact for trial. Id. at 324.

## III. DISCUSSION

Plaintiff's complaint contains the following three claims: (1) Defendant retaliated against Plaintiff for filing his first administrative complaint; (2) Defendant discriminated against Plaintiff on account of his race in failing to select him for the full-time position filled by Mr. Kemrer; and, (3) Defendant discriminated against him on account of his age in failing to select him for the full-time position filled by Mr. Kemrer. (Doc. No. 1.) Defendant moves for summary judgment on all three counts. (Doc. No. 21.) Plaintiff does not oppose summary

judgment on his age discrimination claim in Count III of his complaint. (Doc. No. 28 at 11 n.6.) The Court will, therefore, limit its discussion to Defendant's arguments in favor of summary judgment on Count I and II of the complaint relating to retaliation and race discrimination.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer can be held "liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 131 S.Ct. 1186, 1190 (2011). This is referred to as the "cat's paw" theory of liability, meaning that when an agent of an employer makes the ultimate decision to terminate an employee on the basis of performance assessments by other supervisors, the employer should not be shielded from the "discriminatory acts and recommendations of supervisors that were designed and intended to produce the adverse action." Id. at 1193 (emphasis in original). This rule applies to Title VII discrimination claims. See McKenna v. City of Phila., 649 F.3d 171 (3d Cir. 2011), cert. denied, 132 S. Ct. 1918 (2012).

### A.  Count I: Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in activity protected under Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). With respect to the first element, protected activity consists of participation in certain Title VII proceedings, or opposition of discrimination made unlawful by

6

Title VII. Stagle v. Cnty. of Clarion, 435 F.3d 262, 266 (3d Cir. 2006).

To show that an employee suffered an "adverse employment action," per the second factor, a plaintiff must demonstrate that a "reasonable" employee would have found the alleged retaliatory action materially adverse inasmuch as that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Although this is an objective standard, it is not an inflexible one. Context matters when assessing the significance of any given act of retaliation. Id. Determining whether the employment action was materially adverse will depend on a "constellation of surrounding circumstances, expectations, and relationships" which are not "fully captured" by a simple recitation of the words used or the physical acts performed. Id. at 69. "Failure to rehire" can constitute an adverse employment action in connection with a seasonal employment cycle. Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 320 (3d Cir. 2008).

Prior to the United States Supreme Court's opinion in Burlington Northern, a circuit split existed on whether it was necessary that employment actions directly affect job status in order to constitute an "adverse employment action." [1] Some circuits favored using a lenient standard which did not require that the adverse employment action directly affect job status. See, e.g., Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455-57 (11th Cir. 1998) (plaintiff employee presented sufficient evidence to establish a prima facie case of retaliation because the defendant employer required her to work her lunch break and take a one-day suspension). In contrast,

---

[1] Shannon Vincent, Comment, Unbalanced Responses to Employers Getting Even: The Circuit Split Over What Constitutes a Title VII-Prohibited Retaliatory Adverse Employment Action, 7 U. Pa. J. Lab. & Emp. L. 991, 992-994 (2005).

other circuits applied a more restrictive standard that required the employment action to affect the terms or conditions of employment. See, e.g., Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (plaintiff did not suffer an adverse employment action because the complained-of action did not affect the terms or conditions of her employment). In Burlington Northern, the Supreme Court found that retaliatory actions taken by an employer that do not "directly impact" the employee's job status may nevertheless be sufficiently adverse to bring a retaliation claim. 548 U.S. 53, 67 (2006); see also Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006) (adopting the Burlington Northern test for retaliation claims). Accordingly, a later offer of reinstatement will not cure the initial adverse employment action if it would have been perceived by the employee as materially adverse at the time. Burlington Northern, 548 U.S. at 71-72 (rejecting the argument that an employee's 37-day suspension without pay was not significant because the employee was ultimately "reinstated with back pay.").

The third element of a retaliation claim requires that a plaintiff show a "causal connection" between his or her participation in proceedings against unlawful discrimination, and that the retaliatory action would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006). A plaintiff may establish the requisite causal link between the protected action and the retaliatory act by showing "temporal proximity" or a pattern of "ongoing antagonism" sufficient to give rise to an inference of retaliation. Ullrich v. Sec'y of Veterans Affairs, 457 F. App'x 132, 139 (3d Cir. 2012).

Once the plaintiff establishes all three factors of her prima facie case of retaliation, the burden then shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct. Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997). This burden is relatively

light; the employer need only articulate a legitimate reason for the adverse employment action, not that the articulated reason actually motivated the action. Id. Once the employer has done so, the burden then shifts back to the plaintiff, who must show that the employer's proffered explanation is pretextual, and that retaliation was the real reason for the adverse employment action. Id. To effectively overcome the employer's proffered "pretextual" reason, a plaintiff must show that retaliatory animus played a determinative role in the employer's decision-making process. Id. at 931-35; see also Shanger v. Synthes, 204 F.3d 494, 501 n.8 (3d Cir. 2000).

In support of its motion for summary judgment on Plaintiff's retaliation claim, Defendant argues that Plaintiff has failed to make out the required elements under Title VII. (Doc. No. 23 at 24.) Although Defendant concedes that Plaintiff engaged in protected activity by filing the administrative complaint, thus satisfying the first factor, Defendant argues that Plaintiff was ultimately offered a summer seasonal position in March 2010. Accordingly, Defendant maintains that Plaintiff cannot show that he suffered an "adverse employment action," and thus he fails to make out the second factor of a retaliation claim. (Id.) In response, Plaintiff argues that Defendant's job offer was part of a settlement negotiation, and the offer does not cure Defendant's previous retaliatory action. (Doc. No. 28 at 15.) Moreover, Plaintiff further maintains that he was informed that he would not be rehired for the upcoming 2010 summer season because of the administrative complaint that Plaintiff had filed against Defendant in September 2009. (Doc. No. 22-1 at 16:23-25.) Plaintiff argues that Defendant's choice to inform him that he would not be hired for the upcoming season constitutes an adverse employment action, and that Defendant's stated rationale – because Plaintiff had filed an administrative complaint – supplies the causal link between Plaintiff's protected activity in filing

9

the administrative complaint and Defendant's adverse employment action. Thus, Plaintiff concludes that he has presented a prima facie case of retaliation under Title VII. (Doc. No. 28 at 14.)

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that he has produced evidence sufficient to make out a prima facie case of retaliation under Title VII. First, Defendant concedes that Plaintiff, by filing an administrative complaint, engaged in protected activity under Title VII. (Doc. No. 23 at 24.) Second, Defendant acknowledges that Plaintiff's former supervisor Mr. Kemler informed Plaintiff that he would not be rehired for summer seasonal employment because he filed an administrative complaint against Defendant. (Id.) The Court finds that this constitutes an "adverse employment action," as a reasonable employee may be dissuaded from making or supporting complaints in the future if an employer expressly told her that she would not be rehired for seasonal employment because of her pending administrative complaint. See Burlington Northern, 548 U.S. at 68. The Court rejects Defendant's argument that its later offer of summer employment to Plaintiff in March 2010 cured its earlier adverse employment action in January 2010. Later reinstatement or backpay does not cure an initial adverse employment action. Id. at 72. Accordingly, the Court finds that Plaintiff has produced evidence sufficient to support his prima facie case of retaliation under Title VII.

The Court next turns to whether Defendant has produced evidence sufficient to show that a non-retaliatory, legitimate reason motivated its decision to tell Plaintiff he would not be rehired for seasonal employment in 2010 because of his pending complaint. Defendant has conceded that Mr. Kemler told Plaintiff that he would not be rehired because of the pending complaint, and has not produced any non-retaliatory reason supporting that decision. (Doc. No. 23 at 19.)

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has produced evidence sufficient to support his prima facie case of retaliation, and Defendant has not introduced evidence that would rebut his claim as a matter of law. The Court therefore finds that Defendant is not entitled to summary judgment on Count I of Plaintiff's complaint.

### B.     Count II: Racial Discrimination

#### 1.     Prima Facie Case of Racial Discrimination

To establish a prima facie case of race discrimination under Title VII, a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that support an inference of racial discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). When considering whether an action occurred under circumstances that support an inference of discrimination, courts look closely at whether the facts presented show that the plaintiff was treated differently on account of his race. See, e.g., Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (rejecting evidence consisting solely of the plaintiff's own assertions that he was not rehired on account of his race as insufficient to support an inference of discrimination). For example, circumstances supporting an inference of race discrimination might exist when non-members of the protected class were treated more favorably, or, the position from which the plaintiff was terminated is filled by a member of the non-protected class. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999).

In support of its motion for summary judgment on Count II of Plaintiff's complaint, Defendant concedes that Plaintiff has established the first three elements of his prima facie case of race discrimination under Title VII; namely, that Plaintiff is a member of a protected class,

11

was qualified for the position, and suffered an adverse employment action. (Doc. No. 23 at 16.) Defendant argues, however, that Plaintiff cannot establish the fourth element: that the circumstances surrounding Defendant's hiring of Mr. Kemrer instead of Plaintiff support an inference of racial discrimination. (Id. at 17.) Defendant further maintains that were Plaintiff to present a prima facie case, he nevertheless could not show that Defendant's stated reasons for hiring Mr. Kemrer were pretextual, as, in Defendant's business judgment, Mr. Kemrer was considered the best-qualified employee. (Id. at 18.) Plaintiff, on the other hand, argues that he suffered an adverse employment action under circumstances supporting an inference of racism because his "opportunity for a full-time job was decided by three white individuals who have used and tolerated the term nigger in a variety of unforgivable circumstances." (Doc. No. 28 at 18.) Alternatively, Plaintiff argues that Defendant's employment of a predominantly white workforce in a mixed community also supports finding that the Creamery's decision to hire Mr. Kemrer instead of Plaintiff was racially motivated. (Id. at 18-20.)

On review, the Court finds that the record evidence does not support either of Plaintiff's arguments. First, although Plaintiff correctly asserts that Mr. Holder, Mr. Keeney, and Mr. Kemler have all used "the n-word," a close reading of the record reveals that no nexus appears to exist between their collective use of this racial epithet on isolated occasions and their decision to not hire Plaintiff for the available full-time position. Instead, the record reveals that although Mr. Holder, Vice-President of Hershey Creamery, admitted to using the word "nigger" in his "younger days," (Doc. No. 22-2 at 30:12-16, 31:4-5), he has never used the word while referring to a Creamery employee, and would discipline any Creamery employees using that word after receiving a warning to desist. (Doc. No. 22-2 at 31:6-8, 31:2-13.) With respect to Mr. Keeney,

12

who admits that although he has used the word "nigger" while "[i]n a car," and "[t]hinks and mumbles it" at work, he has never used it to describe any "individual" at the Creamery. (Doc. No. 22-4 at 16:16-19; 16:1-14.) Finally, Mr. Kemler, the Cold Storage Warehouse Supervisor at Hershey Creamery, admits to having used the word when he was "younger," but testified that he has never used the word "nigger" to describe individuals that work at the Creamery. (Doc. No. 22-3 at 56:8-12.) Even assuming that Mr. Kemler, Mr. Keeney, and Mr. Holder had a discriminatory animus against African-Americans, demonstrated by their use of this racial epithet on isolated occasions, Plaintiff has not pointed to any demonstrated nexus between their alleged racism and their decision to hire Mr. Kemrer instead of Plaintiff for the full-time position. Plaintiff does not argue that he ever heard Mr. Holder, Mr. Keeney, or Mr. Kemler use that word while working at the Creamery. Nor does Plaintiff allege that he felt discriminated against during his employment at the Creamery prior to learning that Mr. Kemrer had been hired for the full-time position instead of him. (Doc. No. 22-1 at 9:14-21, 12:12-15.) Accordingly, viewing the record in the light most favorable to the Plaintiff, the Court finds that Plaintiff has not produced evidence showing that he suffered an adverse employment action under circumstances supporting an inference of racial discrimination.

      The Court similarly concludes that the record does not sustain Plaintiff's alternative argument that the Creamery's employment of a disproportionately white workforce requires a finding that Plaintiff suffered an adverse employment action under circumstances supporting an inference of racial discrimination. (Doc. No. 28 at 20.) Although Plaintiff correctly submits that the Creamery's full-time workforce is predominantly white, the percentage of African-Americans making up the seasonal workforce is fifty percent. (Id. at 21.) Title VII does not

13

require outright racial balancing in a workforce; instead, the purpose of Title VII is to ensure "hiring on the basis of job qualifications, rather than on the basis of race or color." Ricci v. DeStefano, 557 U.S. 557, 582 (2009). Without a more complete record on Defendant's hiring practices, the Court cannot find that Defendant's employment of a predominantly white full-time workforce demonstrates that the Creamery's selection of Mr. Kemrer instead of Plaintiff was motivated by racial discrimination.

### 2. Legitimate, Non-Pretextual Reason

Assuming arguendo that Plaintiff has made out his prima facie case of racial discrimination under Title VII, the burden would shift to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This is a "relatively light burden," as the employer need not prove that the tendered reason actually motivated its behavior; rather, it simply needs to articulate a non-discriminatory reason for its employment decision. Id. Once the defendant has done so, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is merely a pretext for intentional discrimination. Id.

To successfully show pretext, a plaintiff must present evidence that: (1) casts doubt upon each of the reasons offered by the defendant for the employment action so that a fact-finder could reasonably conclude that each was a fabrication; or (2) allows the fact-finder to infer that discrimination was more likely than not the cause for the employment action. Dorsey v. Pittsburgh Assoc., 90 F. App'x 636, 640 (3d Cir. 2004). It is not unlawful for an employer to base a hiring decision on subjective criteria as long as an employer's explanation is reasonably attributable to an honest though "partially subjective" evaluation of qualifications. Byrnie v.

14

Town of Cromwell, Bd. of Educ., 243 F.3d 93, 104-05 (2d Cir. 2001).  Moreover, absent evidence of discriminatory intent, courts are not qualified to second-guess hiring decisions, however misguided or mistaken.  Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995).  Rather, a plaintiff must demonstrate such "implausibilities, inconsistencies, incoherence, or contradictions" in the employer's proffered legitimate reasons that a reasonable factfinder could rationally find them unworthy of credence.  Id.

Defendant argues that it hired Mr. Kemrer for the available full-time position instead of Plaintiff because Mr. Kemrer was considered the "best and most qualified employee" under Defendant's critera.  (Doc. No. 23 at 18.)  Defendant asserts that Mr. Kemrer's job performance, his ability to perform every job, and his rapport with the other employees, all supported Defendant's decision to hire him for the full-time position.[2]  (Id.)  Although Defendant concedes that Plaintiff was a satisfactory seasonal employee, Defendant maintains that Mr. Kemrer was selected instead of Plaintiff because he was the best-qualified employee for the full-time position under Defendant's hiring criteria.  Plaintiff, in response, asserts that Defendant's stated rationales are pretextual, claiming that Defendant has provided inconsistent and self-contradictory testimony concerning its decision to hire Mr. Kemrer.  (Doc. No. 28 at 22.)

Indeed, Defendant has supplied different reasons for promoting part-time seasonal workers to full-time employment to Plaintiff.  In 2008, Mr. Kenney rationalized hiring two Caucasian seasonal employees for the available full-time positions instead of Plaintiff because

---

[2] Defendant does not have any set guidelines or minimum requirements by which it considers potential employees other than whether the individual is capable of performing the job. (Doc. No. 23 at 9; Doc. No. 22 ¶ 3.)  Neither does Defendant complete written performance evaluations or utilize productivity standards to evaluate its employees.  (Doc. No. 22 ¶¶ 21-22.)

15

each employee had worked previous summers at the Creamery, and one could drive a truck. (Doc. No. 26-2 at 9-10.) In 2009, Mr. Kenney explained his decision to hire Mr. Kemrer instead of Plaintiff for the available full-time position because the "guys wanted Chad there." (Id. at 14, 22.) However, assuming arguendo that Plaintiff has presented his prima facie case of racial discrimination under Title VII, the Court finds that Defendant has articulated a legitimate, non-discriminatory reason supporting its decision to hire Mr. Kemrer, and that Plaintiff has failed to demonstrate that Defendant's articulated reason is pretextual. Under Defendant's hiring criteria, Mr. Kemrer was considered the best-qualified applicant. Although Mr. Keeney supplied different reasons to Plaintiff supporting their hiring of other employees besides Plaintiff for full-time positions, Mr. Kenney's explanations were not implausible or self-contradictory to the extent that a reasonable factfinder would find them "unworthy of credence." Moreover, even if Defendant's choice to hire Mr. Kemrer was motivated by the fact that his father worked at the Creamery, there is nothing unlawful about basing employment decisions on partially subjective criteria, including nepotism. Brynie, 243 F.3d at 104-05; Parks v. Rumsfeld, 119 F. App'x 382, 385 (3d Cir. 2005) (finding that nepotism is not actionable under Title VII).

IV. CONCLUSION

Defendant is not entitled to summary judgment on Count I of Plaintiff's complaint, because a genuine dispute of material fact exists about whether Plaintiff was retaliated against for filing an administrative complaint. Defendant, however, is entitled to summary judgment on Count II of Plaintiff's complaint, because Defendant has demonstrated that no dispute of material fact exists concerning whether Plaintiff was not hired for the full-time position under circumstances giving rise to an inference of racial discrimination. Plaintiff does not oppose

16

Defendant's motion for summary judgment on Count III of his complaint relating to age discrimination. Thus, the Court will grant Defendant's motion with respect to Counts II and III, but deny the motion with respect to Count I. An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY R. JOHNSON, SR., : | |
|     Plaintiff : | |
| : | No. 1:11-cv-00776 |
| v. : | |
| : | (Chief Judge Kane) |
| HERSHEY CREAMERY COMPANY, : | |
|     Defendant : | |

## ORDER

**AND NOW,** on this 8th day of March 2013, for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion for summary judgment (Doc. No. 21) is **DENIED** with respect to Count I, and **GRANTED** with respect to Counts II and III. The Clerk of Court shall defer entering judgment until all claims are adjudicated.

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania